IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK THOMAS, | ) | |
| | ) | |
| Petitioner, | ) | 12 C 5373 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CAMERON WATSON, Warden, | ) | |
| Western Illinois Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Derrick Thomas has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Cameron Watson,[1] Warden of Western Illinois Correctional Center ("Respondent"), contends that Thomas's claims are procedurally defaulted, meritless, or non-cognizable. For the following reasons, Thomas's petition is denied.

### I. Factual Background

A jury convicted Thomas of first-degree murder and attempted first-degree murder. The facts underlying the conviction are as follows.[2]

---

[1] Rule 2(a) of the Rules Governing Section 2254 *habeas* cases provides that the proper respondent is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Cameron Watson is currently Warden of Western Illinois Correctional Center. Accordingly, the Court substitutes him as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 2254(e)(1), the state courts' recitations of fact are presumptively correct in *habeas* proceedings. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because Thomas has not attempted to rebut this presumption with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), the Court adopts the factual account as provided in State Court Record, Ex. G, Common Law Record on Postconviction Appeal at C17, *People v. Thomas*, No. 04 CR 10486 (Ill. App. Ct. Sept. 30, 2008) ("Direct Appeal

Andrea Harris was shot and killed during a gang-related shootout in Chicago, Illinois on July 16, 2003. Postconviction Trial Court Order at 2. Harris's boyfriend at the time, Alonzo Walker, was a member of the Traveling Vice Lords street gang, which had been at "war" with another nearby gang, the New Breeds. *Id.*; Direct Appeal Order at 2. Immediately before the shooting, Walker, Harris, and several others were sitting on a porch when a station wagon pulled up and its occupants began shooting at Walker. *Id.* at 3–4. Walker returned fire, inadvertently shooting Harris. *Id.* at 4.

Walker testified at trial consistent with this sequence of events. *Id.* at 3–4. He explained that, although he had initially resisted telling his story to police, he eventually told officers his account of the events and identified Thomas and Thomas's co-defendant, Randy Allen, as the shooters from the station wagon. *Id.* at 4.

Walker also testified that, on August 15, 2003, a police officer took him into an interview room where Thomas was present. There, Walker stated to Thomas: "[I]f [you] wouldn't never pulled up shooting at me . . . I wouldn't never hit [Harris]." *Id.* at 5. The officer in question, Detective Swiderek, corroborated this interaction. *Id.*

Detective Swiderek also testified to certain statements made by Thomas. *Id.* at 6. Specifically, Thomas agreed that, on the night of the murder, he and Allen drove in a station wagon to the house where Walker was located and initiated the

---

Order"), ECF No. 19-7, and *id.* at C122, *People v. Thomas*, No. 04-CR-10486 (Ill. Cir. Ct. Apr. 30, 2010) ("Postconviction Trial Court Order").

2

shootout by firing multiple shots at Walker. *Id.* Thomas told Detective Swiderek that he had done this because Walker had shot him a few weeks earlier. *Id.* Furthermore, Thomas admitted that the station wagon he and Allen had used was stolen. *Id.* This fact was corroborated at trial by the owner of the station wagon, who testified that he did not know Thomas and had not given him permission to use the car. *Id.* at 9.

The State also called additional witnesses, all of whom testified to the general events of the shooting, but although none were able to identify Thomas specifically. *See id.* at 7–9. In particular, Adrienne Johnson, who had been at the house with Walker, testified that the occupants of the station wagon had fired first. *See id.* at 13.

During closing arguments, the State argued that Thomas and Allen were members of the New Breeds gang and that they had shot at Walker because they were at "war" with the Traveling Vice Lords and because Walker had shot Thomas two weeks earlier. *See id.* at 10. The State further contended that Thomas and Allen had used a stolen car "in an attempt to prevent law enforcement officials from determining their identities." *Id.* In response, defense counsel challenged the credibility of the State's witnesses and argued that there was no clear evidence as to who had fired the first shots. *Id.* at 10–11.

The jury convicted Thomas of attempted first-degree murder for shooting at Walker and first-degree murder for committing the felony of aggravated discharge of a firearm, which resulted in Harris's death. *See* State Court Record, Ex. B,

Common Law Record on Direct Appeal at C23–24, Indictment, ECF No. 19-2. Thomas was initially sentenced to concurrent prison terms of 10 and 32 years. He was later resentenced to concurrent prison terms of 10 and 24 years. Direct Appeal Order at 1.

## II. Procedural Background

On direct appeal from his conviction, Thomas argued that the trial court abused its discretion by allowing the State to present (1) evidence that he and Allen had been in a stolen vehicle at the time of the shooting and (2) the prior consistent statement that Walker made to Thomas when they crossed paths in an interview room. Direct Appeal Order at 1. For its part, the State asked to remand for resentencing because Thomas's sentences were required to run consecutively. *Id.*

The Illinois appellate court rejected both of Thomas's evidentiary challenges, concluding that Thomas had forfeited those claims by failing to raise them in a post-trial motion. *Id.* at 12, 16. Additionally, the court held that the plain-error doctrine did not apply, pointing out that the evidence in the case was not "closely balanced" due to Thomas's confession and the consistency of the other eyewitness testimony. *Id.* at 13, 16–17. The court did, however, remand for resentencing. *Id.* at 17–18. Thomas then renewed his claims in a petition for leave to appeal ("PLA") to the Illinois Supreme Court, which was denied. State Court Record, Ex. F, PLA and Denial of PLA, *People v. Thomas*, No. 107567 (Ill. 2009), ECF No. 20-4.

In a subsequent postconviction petition filed in state court, Thomas raised several new claims. First, he submitted the affidavit of Shatara Funches, who

4

attested that Harris was not an "innocent bystander" but rather was herself a member of the Traveling Vice Lords, who provided security for Walker. Postconviction Trial Court Order at 4. According to Thomas, Funches's affidavit supported his innocence. *Id.* Second, Thomas argued that aggravated discharge of a firearm is not a proper basis for a felony-murder conviction, citing *People v. Morgan*, 758 N.E.2d 813, 836 (Ill. 2001). *See id.* at 6; State Court Record, Ex. G at C37, Postconviction Petition at 9, ECF No. 19-7. Finally, Thomas contended that his trial counsel was ineffective for (1) failing to question prospective jurors about anti-gang bias during *voir dire* and (2) failing to challenge the propriety of his arrest. Postconviction Trial Court Order at 9.

The Illinois circuit court rejected all three claims. First, the court concluded that Funches's affidavit would not have changed the result of Thomas's trial and, thus, failed to support a Thomas's claim of actual innocence. *Id.* at 6. As the court explained, "[e]ven if the victim were portrayed as a gang member and not an innocent bystander, the fact remains that [Thomas] initiated the criminal activity that caused the victim's death." *Id.* Next, the court held that, under Illinois case law, Thomas's aggravated discharge of a firearm was a proper predicate offense for his felony-murder conviction. *Id.* at 7–8. As to Thomas's claim of ineffective assistance based on trial counsel's questioning during *voir dire*, the court held that, because the claim was "premised on the trial record," it was waived for purposes of postconviction review. *Id.* at 10. Finally, the court rejected Thomas's claim of ineffective assistance based on counsel's failure to challenge his arrest, concluding

5

that this decision was a "matter[ ] of trial strategy," and that, in any event, Thomas was not prejudiced by counsel's performance. *Id.* at 10–11.

Thomas appealed, and appointed counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), representing that the appeal raised no issue of arguable merit. State Court Record, Ex. H, Summary Order in Postconviction Appeal, *People v. Thomas*, No. 1-10-1483 (Ill. App. Ct. Aug. 23, 2011), ECF No. 19-8. The Illinois appellate court granted the motion to withdraw and affirmed the trial court's judgment with little discussion. *Id.* Thomas subsequently filed a PLA, which was denied. State Court Record, Ex. I, PLA and Denial of PLA, *People v. Thomas*, No. 113252 (Ill. 2012), ECF No. 20-5.

Thomas filed his § 2254 petition in this Court on July 9, 2012. At that time, the Court stayed briefing to allow Thomas to pursue additional state postconviction remedies. *See* 8/9/12 Minute Entry, ECF No. 7. The Court ordered Thomas to file a status report every ninety days to apprise the Court of the progress of the state proceedings. *See id.*

Thomas did not comply with this order, and in April 2019, the Court requested an update on the state proceedings. *See* 4/11/19 Minute Entry, ECF No. 12. Respondent clarified that, since the stay was entered, Thomas had not filed any subsequent postconviction motions. *See* Status Report, ECF No. 13. Accordingly, the Court set a briefing schedule for Thomas's § 2254 petition. *See* 4/17/19 Minute Entry, ECF No. 14. Thomas's reply brief was due on June 17, 2019; however, to

date, the Court has not received any filings from him. Accordingly, the Court decides Thomas's § 2254 petition without the benefit of a reply brief.

### III. Legal Standard

A writ of *habeas corpus* will be granted only if the Petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, the Court may not grant *habeas* relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state-court decision is based on an unreasonable determination of the facts. *Id.* § 2254(d).

"A federal *habeas* court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Clearly established federal law consists of the "holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*,

529 U.S. 362, 412 (2000)). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict that standard. *Early v. Packer*, 537 U.S. 3, 8 (2002).

What is more, the Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Moreover, the Court's analysis is "backward-looking." *Cullen v. Pinholster*, 564 U.S. 170, 182 (2011). And the Court is limited to reviewing the record before the state court, as well as the Supreme Court precedent in existence, at the time of the state-court decision. *Id.*; *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

It should be noted that "AEDPA's standard is intentionally 'difficult [for Petitioner] to meet.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 352 (2013)). "As a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (internal quotation marks omitted). This is because *habeas corpus* is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks

omitted). "Under § 2254(d), a *habeas* court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.* at 102.

V.      **Analysis**

Thomas raises five claims in his § 2254 petition. First, he asserts that he was denied a fair trial by the introduction of evidence that he and Allen used a stolen vehicle for the shooting ("Ground One"). Second, he argues that he was denied a fair trial by the admission of Walker's prior interview-room statement ("Ground Two"). Third, Thomas contends that Funches's affidavit demonstrates his actual innocence ("Ground Three"). Fourth, he contends that his felony-murder conviction was improperly based on the predicate felony of aggravated discharge of a firearm ("Ground Four"). Fifth, Thomas argues that his trial counsel was ineffective for failing to question prospective jurors about anti-gang bias and for failing to challenge his arrest ("Ground Five").

**A.     Grounds One, Two, and Four are Procedurally Defaulted**

Respondent contends that Grounds One, Two, and Four of Thomas's § 2254 petition are procedurally defaulted—Grounds One and Two because the Illinois courts concluded that Thomas had forfeited his claims, and Ground Four because Thomas did not fairly present a federal claim about his felony-murder predicate offense at all levels of his state postconviction proceedings. Additionally,

Respondent argues that these claims raise non-cognizable issues of state, not federal, law.

A claim is procedurally defaulted if the petitioner has failed to fairly present it at each level of state-court review, including in a petition for leave to appeal before the state supreme court. *Guest v. McCann*, 474 F.3d 926, 929–30 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)). Additionally, a state prisoner's *habeas* claim may not be entertained by a federal court when "(1) a state court [has] declined to address a prisoner's federal claims because the prisoner ha[s] failed to a meet a state procedural requirement," or "(2) the state judgment rests on independent and adequate state procedural grounds." *Walker v. Martin*, 562 U.S 307, 316 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)) (internal quotation marks omitted).

A state procedural rule is "adequate" if it is "firmly established and regularly followed." *Id.* (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). A state procedural rule is "independent" if the state court "actually relied on [it] as an independent basis for the disposition of the case." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010). If a claim is procedurally defaulted, a petitioner is not entitled to *habeas* relief unless cause exists for the default and actual prejudice was suffered, or a fundamental miscarriage of justice resulted in the conviction despite the petitioner's actual innocence. *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

As an initial matter, Grounds One and Two—both of which challenge the trial court's decision to admit certain evidence and testimony—raise issues of state, not federal, law. As Respondent correctly points out, "errors of state law in and of themselves are not cognizable on *habeas* review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Accordingly, Thomas cannot obtain *habeas* relief for any violation of state evidentiary laws or standards.

Still, "if a state court's errors have deprived the petitioner of a right under federal law," a federal court may intervene. *Id.* Specifically, "a state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial." *Id.* Thomas characterizes his claims challenging the admission of the stolen-car evidence and Walker's prior statements as falling under the Due Process Clause of the Fourteenth Amendment.

These claims, however, are procedurally defaulted. The Illinois appellate court addressed both issues and concluded that Thomas had forfeited his claims by failing to raise them in a post-trial motion. The Seventh Circuit has held that forfeiture is an adequate and independent state ground compelling a finding of procedural default, even where the state court has undergone a "limited review" for plain error. *Kaczmarek*, 627 F.3d at 592.

Turning to Ground Four, it too raises an issue of state law. Here, Thomas contends that he was improperly convicted of felony murder based on a predicate offense—aggravated discharge of a firearm—that "arose from and was inherent to the offense of First-Degree Murder." Pet'r's § 2254 Pet. at 6, ECF No. 6. This claim

11

speaks to the issue addressed by the Illinois Supreme Court in *People v. Morgan*—namely, what acts may be considered predicate felonies for purposes of a felony-murder conviction in Illinois. *See* 758 N.E.2d at 836–37. And as another court has noted, this is "a quintessential state issue." *Boyd v. Acevedo*, No. 06-3050, 2008 WL 4057766, at *1 (C.D. Ill. Aug. 27, 2008).

Furthermore, even if Thomas now intends to pursue this claim as a violation of his rights under the United States Constitution, he did not do so first at the state level. Although Thomas's state postconviction petition contained a clause purporting to "preserve[ ] and fairly present[ ] each of his federal questions of constitutional law," State Court Record, Ex. G at C37, Postconviction Petition at 4, he did not actually set forth any such questions for the state court to address. Instead, he referred only to Illinois cases about the state's definition of felony murder. Accordingly, although it is possible that constitutional issues could be implicated by the elements of felony murder, *see, e.g.*, *Evans v. Dorethy*, 833 F.3d 758, 760–61 (7th Cir. 2016) (discussing felony-murder jury instructions in the context of a petitioner's Sixth Amendment claim), Thomas did not fairly present such a claim to the state courts before raising it in his federal *habeas* petition. *See Guest*, 474 F.3d at 929; *see also Chambers v. McCaughtrey*, 264 F.3d 732, 738 & n.2 (7th Cir. 2001) (explaining that a reference made "only in passing" to a federal cause of action was insufficient to meet the requirement that a claim must be squarely presented to the state courts first).

**B.      Ground Five is Procedurally Defaulted in Part and Lacks Merit**

Respondent contends that the first part of Ground Five—which raises trial counsel's failure to question prospective jurors about anti-gang bias—is procedurally defaulted. Furthermore, Respondent argues, the second part of Ground Five—discussing trial counsel's failure to file a motion to suppress—was addressed on the merits by the state court in a manner consistent with federal law and the facts of the case.

To the first point, the Illinois circuit court concluded that Thomas's challenge to trial counsel's actions during *voir dire* was waived, noting that this argument was "premised on the trial record" and thus could have been raised on direct appeal. Postconviction Trial Court Order at 10 (citing *People v. Coleman*, 642 N.E.2d 821, 824 (Ill. App. Ct. 1994)).[3] Waiver of this type is an adequate and independent state ground for the decision, so this portion of Ground Five is procedurally defaulted. *See Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) (concluding that an ineffective-assistance claim was procedurally defaulted where the state court determined that the petitioner had waived the claim by failing to raise it on direct appeal).

As for Thomas's challenge to trial counsel's failure to attack the legality of his arrest, Respondent points out that the Illinois circuit court rejected this claim on

---

[3]      Although the Illinois appellate court issued a decision on appeal from the postconviction trial court's order, it adopted the reasoning of the Illinois circuit court. *See* State Court Record, Ex. H, Summary Order in Postconviction Appeal. Accordingly, the Court "looks through" to the Illinois circuit court's analysis, as it was the last court to issue a reasoned decision adjudicating the merits of Thomas's postconviction petition. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

the merits. Specifically, the court held that "[d]ecisions to file motions to suppress or quash involve matters of trial strategy and therefore are not challengeable as ineffective assistance of counsel." Postconviction Trial Court Order at 10–11. In addition, the court concluded, Thomas could not show any prejudice given that Thomas had "admitted to initiating the gunfight," Walker had testified consistently with Thomas's confession, and other witnesses had described the occupants of the station wagon firing their weapons first. *Id.* at 11. Respondent contends that this decision is not contrary to clearly established federal law or based on an unreasonable determination of the evidence.

The state court's analysis of Thomas's ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668, 688–93 (1984). Under *Strickland*, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced his defense. *Id.*; *see Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A *habeas* petitioner "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance. . . . [H]e must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Emerson v. Shaw*, 575 F.3d 680, 685 (7th Cir. 2009) (internal citation marks omitted). Simply put, the court's decision must be "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). Not only that, but

14

unless there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *habeas* relief is unavailable. *Strickland*, 466 U.S. at 694.

Here, the state court's determination was well within the bounds of *Strickland*. Although the decision not to file a motion to suppress is not *always* an unreviewable tactical choice, *see, e.g.*, *Rodriguez v. Young*, 906 F.2d 1153, 1161 (7th Cir. 1990), here, Thomas provides no reason to believe counsel's decision was anything but strategic.[4] But more importantly, Thomas has not and cannot challenge the state court's determination that he suffered no prejudice from his counsel's failure to file a motion to suppress his arrest. True, a significant amount of the State's case rested on Thomas's confession—which, arguably, was dependent upon the validity of the unchallenged arrest. But even without the confession, there was ample evidence establishing Thomas's guilt. Accordingly, the state court's *Strickland* analysis is not contrary to clearly established law or fact.

## C. Ground Three is Meritless

Lastly, Respondent argues that Ground Three—Thomas's claim of actual innocence based on Funches's affidavit—is not reviewable, was appropriately addressed on the merits in the state postconviction court, and cannot excuse Thomas's procedural default.

Respondent is correct that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal *habeas* relief

---

[4] Respondent points out that Thomas's trial counsel did file a motion to suppress Thomas's post-arrest statements and that the motion was denied. *See* State Court Record, Ex. B, Common Law Record on Direct Appeal at C65–68, Mot. Suppress.

15

absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Milone v. Camp*, 22 F.3d 693, 699–700 (7th Cir. 1994) (explaining that unless a prisoner is facing a death sentence, "actual innocence" is not a cognizable claim).

Furthermore, the Illinois circuit court found Thomas's actual innocence claim to be meritless. A conviction for felony murder requires only the commission of a "forcible felony" that—intentionally or not—led to the death of a person. *See People v. Belk*, 784 N.E.2d 825, 828 (Ill. 2003). As the circuit court explained, Funches's affidavit challenged only the State's characterization of Harris as an innocent victim; it did not change the fact that Thomas, in committing a forcible felony, caused Harris's death. Accordingly, even taking Funches at her word, Thomas's guilt is not in question. The state court did not incorrectly apply any law or fact to reach this determination, and, accordingly, Ground Three is not a valid basis for *habeas* relief.

For the same reasons, Thomas's claim of actual innocence cannot excuse the procedural default of his other claims. "Actual innocence" is a "narrow exception" to the general rule requiring a showing of cause and prejudice to excuse procedural default. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). To meet this standard, a petitioner must demonstrate "that 'in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.'" *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016) (quoting *House v. Bell*,

16

547 U.S. 518, 537 (2006)). Since Funches's affidavit does not call Thomas's guilt into question, it cannot excuse his procedural default.

V. **Conclusion**

For the reasons provided, Thomas's petition for *habeas corpus* is denied. Furthermore, the Court declines to issue a certificate of appealability. Thomas has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner. *See* 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). Civil case terminated.

**IT IS SO ORDERED.**            ENTERED: 4/8/20

*[signature]*

**John Z. Lee**
**United States District Judge**